No. 26-8020

IN THE

# United States Court of Appeals for the Seventh Circuit

HO-CHUNK NATION,

*Plaintiff-Respondent*,

v.

KALSHI INC. *and* KALSHIEX LLC,

*Defendants-Petitioners.*

On Petition for Permission to Appeal from the
United States District Court for the Western District of Wisconsin
No. 3:25-cv-00698-wmc (Hon. William M. Conley)

**ANSWER IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL AND CROSS-PETITION**

**PURSUANT TO 28 U.S.C. § 1292(b)**

Emily M. Feinstein
Bryce A. Loken
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Emily.Feinstein@quarles.com
Bryce.Loken@quarles.com
Telephone: 608.251.5000

Lester J. Marston
Scott Johnson
Cooper DeMarse
Nicholas Marston
John Bursick
THE LAW OFFICES OF
RAPPORT AND MARSTON
405 West Perkins Street
Ukiah, CA 95482
Telephone: 707.462.6846
ljmarston@rmlawoffice.net
scottrap@pacbell.net
cooper.demarse@gmail.com
nomarston@gmail.com
jabursick@gmail.com
Counsel for Plaintiff-Respondent
Ho-Chunk Nation

## TABLE OF CONTENTS


INTRODUCTION ........ 7

FACTUAL AND PROCEDURAL BACKGROUND ........ 9

QUESTIONS PRESENTED ........ 10

RELIEF SOUGHT ........ 11

ARGUMENT ........ 11

I. Kalshi cannot rely on the whole-order rule to change the standard for whether this Court should accept review ........ 11

II. Kalshi fails to satisfy the § 1292(b) standard for interlocutory appeal ........ 13

A. Kalshi does not raise pure questions of law with its reformulated issues ........ 14

B. Kalshi does not raise controlling questions ........ 16

C. Kalshi cannot show that its issues are contestable ........ 19

D. Review by this Court will not materially advance this litigation ........ 20

E. Kalshi cannot avoid satisfying Ahrenholz by arguing novelty and national significance ........ 22

III. *Blue Lake II* undermines the district court's conclusion that the certified questions satisfy *Ahrenholz* ........ 23

IV. If the Court grants the Petition, it should also review the rulings adverse to the Nation in the certified order ........ 24

A. The Nation has been, and continues to be, irreparably harmed ........ 25

B. The District Court erred in dismissing the Nation's RICO claim based on the absence of fraudulent intent ........ 27

C. The District Court erred in dismissing the Nation's Lanham Act False Advertising claims ........ 28

CONCLUSION ........ 31

## TABLE OF AUTHORITIES

**Cases**


*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ........ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 29

*Ashley W. v. Holcomb*,
34 F.4th 588 (7th Cir. 2022) ........ 12

*Blue Lake I. Blue Lake Rancheria v. Kalshi Inc.*, No. 25-CV-06162-JSC,
2025 WL 3141202 (N.D. Cal. Nov. 10, 2025) ........ 18, 31

*Blue Lake Rancheria v. Kalshi, Inc.*, No. 25-7504,
2026 WL 2728466 (9th Cir. Sept. 16, 2026) ........ 8, 9

*Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*,
291 F.3d 1000 (7th Cir. 2002) ........ 19

*Boone v. Ill. Dep't of Corrections*,
71 F.4th 622 (7th Cir. 2023) ........ 11

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*,
42 F.4th 1024 (9th Cir. 2022) ........ 25

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 7251 (9th Cir. 1999) ........ 30

*Data Rsch. & Handling, Inc. v. Vongphachanh*,
278 F. Supp. 3d 1066 (N.D. Ind. 2017) ........ 30

*Demkovich v. St. Andrew the Apostle Par.*,
3 F.4th 968 (7th Cir. 2021) ........ 7, 10, 12

*Ho-Chunk Nation v. Kalshi Inc.*,
No. 26-8020 (7th Cir. Sept. 21, 2026) .......... 6

*In re Lion Air Flight JT 610 Crash*,
110 F.4th 1007 (7th Cir. 2024) .......... 12

*In re Text Messaging Antitrust Litigation*,
630 F.3d 622 (7th Cir. 2010) .......... 13

*Kansas v. United States*,
249 F.3d 1213 (10th Cir. 2001) .......... 26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 30

*Nation v. City of Henryetta*,
836 F. Supp. 3d 1148 (E.D. Okla. 2026) .......... 26

*Paul Davis Restoration, Inc. v. Everett*, No. 14-C-1534,
2014 WL 7140038 (E.D. Wis. Dec. 12, 2014) .......... 30

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
86 F.3d 656 (7th Cir. 1996) .......... 16

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
648 F. App'x 609 (9th Cir. 2016) .......... 31

*United Airlines, Inc. v. Mesa Airlines, Inc.*,
219 F.3d 605 (7th Cir. 2000) .......... 24

*United States v. Cyprian*,
23 F.3d 1189 (7th Cir. 1994) .......... 27

*United States v. Tedder*,
403 F.3d 836 (7th Cir. 2005) ........ 27

*Wisconsin v. Ho-Chunk Nation*,
512 F.3d 921 (7th Cir. 2008) ........ 15

*Yamaha Motor Corp. v. Calhoun*,
516 U.S. 199 (1996) ........ 10, 11, 12

**Statutes**

7 U.S.C. § 2(a)(1)(A) ........ 16

18 U.S.C. § 1084 ........ 9

18 U.S.C. § 1343 ........ 9, 27

18 U.S.C. § 1961 ........ 28

25 U.S.C. § 2702(1) ........ 25

25 U.S.C §§ 2710(b)(2)(A)–(B), (d)(1)(A)(ii) ........ 25

25 U.S.C § 2710(d)(3)(C) ........ 15

25 U.S.C. § 2710(d)(7)(A)(ii) ........ 17, 19, 23, 26

28 U.S.C. § 1292(b) ........ 22, 24

## INTRODUCTION

The district court was clear in its Certification Order: Petitioners', Kalshi, Inc. and Kalshiex, LLC (collectively "Kalshi"), proposed questions "do not accurately reflect the court's reasoning and conclusions." (Petition for Permission to Appeal Ex. B at 5, *Ho-Chunk Nation v. Kalshi Inc.*, No. 26-8020 (7th Cir. Sept. 21, 2026) ("Pet.").) The district court, therefore, articulated the actual "controlling questions" and concluded that, "[p]hrased as such," the four criteria for interlocutory review were satisfied. (*Id.* at 6.) Kalshi acknowledges that the district court "reframed" its questions but calls the difference "immaterial." (Pet. at 5 n.1.) But the difference *is* material to granting the Petition.

The interlocutory appeal process contemplates three distinct inquiries: first, the district court must certify an order upon finding that the statutory criteria are satisfied, *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) ("[T]here must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation."). Second, the petitioner must persuade the court of appeals to permit the appeal, which independently applies the same criteria. Third, if permission

is granted, the court of appeals can review the entire certified order, unrestricted by the controlling questions identified by the district court. *Demkovich v. St. Andrew the Apostle Par.*, 3 F.4th 968, 974 (7th Cir. 2021).

Kalshi collapses the third inquiry into the second. It invokes the district court's determination that the district court's questions satisfy the statutory criteria to seek review of questions the district court declined to certify, relying on decisions concerning the scope of review after permission has been granted. But the potential scope of the appeal cannot establish the requirements for permission.

The Petition should be denied for three reasons. First, Kalshi invokes the scope-of-review rule in *Demkovich* to avoid independently satisfying *Ahrenholz* as to the questions the district court declined to certify. Second, Kalshi's preferred questions do not independently satisfy *Ahrenholz*. Third, the Ninth Circuit's intervening decision in *Blue Lake Rancheria v. Kalshi, Inc.*, No. 25-7504, 2026 WL 2728466 (9th Cir. Sept. 16, 2026) ("*Blue Lake II*"), eliminates or, at minimum, substantially undermines the decisional conflict on which the district court relied in finding the district court's certified questions contestable.

Should this Court disagree and grant Kalshi's petition, Respondent, the Ho-Chunk Nation (the "Nation") asks this Court to also grant its cross-petition. As explained below, whether the Nation met its burden of showing irreparable harm, alleged a RICO claim, and alleged a Lanham Act claim are all issues over which this Court should grant interlocutory appeal.

## Factual and Procedural Background

The Nation will not repeat facts provided by Kalshi, except as necessary to explain the issues raised by its conditional cross-petition. (*See* Pet. at 6–9.)

The Nation moved for preliminary injunctive relief under the Indian Gaming Regulatory Act ("IGRA") and the Lanham Act. (Pet. Ex. A at 2.) Although the district court concluded the Nation had shown a likelihood of success on its IGRA claim, it denied relief for failure to establish irreparable harm. (*Id.* at 22–24.)

The Complaint alleged three predicate offenses in support of its claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"): wire fraud, 18 U.S.C. § 1343; violation of the Wire Act, 18 U.S.C. § 1084; and operation of an illegal gambling business, 18 U.S.C. § 1955. (Pet. Ex. A at 7, 27–29.) In dismissing the claim, the

district court concluded the Nation had failed to allege a scheme or intent to defraud and reasoned Kalshi operated openly under a "colorable argument" that its conduct was lawful under the Commodity Exchange Act ("CEA"). (*Id.* at 28–29.)

Finally, the Nation alleged Kalshi violated the Lanham Act by advertising its sports betting as legal nationwide. (Pet. Ex. A at 24–27.) The district court dismissed that claim because no court or agency had yet definitively resolved the legality of Kalshi's sports event contracts and therefore concluded the Nation had not plausibly alleged Kalshi's representations to be false or misleading. (*Id.* at 26–27.)

## Questions Presented

Respondent does not object to Kalshi's statement of the questions certified by the district court. (*See* Pet. at 5.) If this Court grants the Petition, however, "[a]n appeal under § 1292(b) brings up the whole certified order." *Demkovich*, 3 F.4th at 974. Appellate jurisdiction "is not tied to the particular question formulated by the district court." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). Here, the certified order is the district court's May 11, 2026 Opinion and Order, which granted in part and denied in

part Kalshi's motion to dismiss and denied the Nation's motion for preliminary injunctive relief. (Pet. Ex. A at 29–30.)

## Relief Sought

Respondent respectfully requests this Court deny the Petition. Only if the Court grants the Petition, Respondent requests the Court also review the holdings of the district court's May 11, 2026 Opinion and Order adverse to Respondent and reverse: (1) denial of the Nation's motion for preliminary injunctive relief for failure to establish irreparable harm; and (2) dismissal of the Nation's claims under the RICO and the Lanham Act. (Pet. Ex. A at 23–30.)

## Argument

### I. Kalshi cannot rely on the whole-order rule to change the standard for whether this Court should accept review.

At the outset, Kalshi blurs the distinct standard for granting the Petition with the standard applied once the appeal is granted. 28 U.S.C. § 1292(b) establishes the threshold requirements for an interlocutory appeal under *Ahrenholz*. The district court certification does not satisfy them. This Court must "independently decide whether to accept the certified question for interlocutory appeal" by applying the same standard as the district court. *Boone v. Ill. Dep't*

*of Corrections*, 71 F.4th 622, 625 (7th Cir. 2023); *Ahrenholz*, 219 F.3d at 675; (*see* Pet. at 9–10).

Kalshi misapplies *Yamaha. Yamaha*, 516 U.S. at 205 establishes that § 1292(b) appellate jurisdiction "applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court." Thus, once an interlocutory appeal is properly before this Court, it "may address any issue fairly included within the certified order because 'it is the order that is appealable, and not the controlling question identified by the district court.'" *Id. Yamaha* therefore addressed what may be reviewed once permission is granted, not what justifies granting permission. *See id.* at 204–05.

Kalshi cannot suggest otherwise because it cites case after case applying the whole-order rule after appellate review was permitted. *See Ashley W. v. Holcomb*, 34 F.4th 588, 592 (7th Cir. 2022); *Demkovich,* 3 F.4th at 974 ; *In re Lion Air Flight JT 610 Crash*, 110 F.4th 1007, 1011 (7th Cir. 2024).[1] These cases define what this

[1] Kalshi also cites *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 811–12 (7th Cir. 2015), which concerned review of a remand order under 28 U.S.C. § 1447(d), not § 1292(b). *Lu Junhong* recognized that only "once the appeal has been accepted" does the court review the "order" rather than the certified issues. *Id.* at 811 (citing *Yamaha*, 516 U.S. at 205).

Court may consider on an interlocutory appeal; none hold that the whole-order rule supplies a basis for permitting that appeal in the first instance.

Thus, the whole-order rule does not make the difference between Kalshi's preferred questions and those certified by the district court "immaterial" at this stage. (Pet. at 5 n.1.) Permission instead turns on the requirements set forth in *Ahrenholz* as they relate to the district court's certified questions, which Kalshi has failed to satisfy.

## II. Kalshi fails to satisfy the § 1292(b) standard for interlocutory appeal.

Section 1292(b) imposes four requirements for interlocutory review: "there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation." *Ahrenholz*, 219 F.3d at 675. Those requirements are conjunctive. *Id.* at 676. Crucially, a § 1292(b) petition "tends to delay the litigation in the district court," where proceedings ordinarily "grind[] to a halt" following certification. *Id.* at 675–76; (*see* Pet. Ex. B at 8).

Although *In re Text Messaging Antitrust Litigation* cautioned

against an unduly "narrow interpretation" of what constitutes a question of law, it emphasized that interlocutory appeals "should not be routine." 630 F.3d 622, 625–26 (7th Cir. 2010). § 1292(b) ordinarily concerns questions requiring "the interpretation, and not merely the application, of a legal standard," *id.* at 625, that can be resolved "quickly and cleanly without having to study the record." *Ahrenholz*, 219 F.3d at 677. This Court must independently determine whether those requirements are satisfied. *Boone*, 71 F.4th at 625.

Kalshi claims that the difference between the issues it wants this Court to review and those certified by the district court are "immaterial." But the district court declined to certify Kalshi's formulations because they did not accurately reflect the district court's rulings. (Pet. Ex. B at 5–6.) Kalshi cannot rely on the district court's § 1292(b) analysis of the questions certified to establish that Kalshi's preferred questions independently satisfy *Ahrenholz*.

### A. Kalshi does not raise pure questions of law with its reformulated issues.

At the outset, Kalshi never addresses whether its preferred questions are pure questions of law. *See Boone*, 71 F.4th at 625;

*Ahrenholz*, 219 F.3d at 676–77. Rather, Kalshi relies on the district court's analysis of distinct questions. "Both certified questions are pure questions of law . . . [t]he district court said as much: the motion to dismiss 'present[s] only questions of law, not fact' . . . ." (Pet. at 10–11.) The district court's reasoning does not apply once Kalshi substitutes its preferred questions for the district court's certified questions. As detailed below, immediate review would require this Court either to decide issues beyond those actually resolved below or to return the case without resolving the issues necessary to proceed through final judgment.

Whether "an alleged violation of a tribal gaming ordinance is actionable as a compact violation under IGRA" requires an inquiry specific to the Compact and Gaming Ordinance. (*Id.* at 5 n.1.) 25 U.S.C. § 2710(d)(7)(A)(ii) reaches a compact violation only when "the alleged violation relates to a compact provision agreed upon pursuant to the IGRA negotiation process," requiring examination of the particular Compact provisions invoked and whether they concern subjects authorized by § 2710(d)(3)(C). *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 933–34 (7th Cir. 2008). Kalshi's preferred question one cannot be resolved "quickly and cleanly" as

an abstract proposition without examining and applying the governing rule to the Compact and Gaming Ordinance. *Ahrenholz*, 219 F.3d at 676–77; *Boone*, 71 F.4th at 625.

Whether "the CEA's grant of exclusive jurisdiction to the CFTC bars Indian tribes such as the Nation from regulating derivatives traded on DCMs" is facially abstract, but only if this Court assumes an antecedent legal issue the district court never decided: whether Kalshi's sports-event contracts constitute a "swap" subject to the CFTC's exclusive jurisdiction. *See* 7 U.S.C. § 2(a)(1)(A); *id.* § 1a(47). The district court expressly declined to decide this issue: "The district court held that even if Kalshi's sports event contracts 'are swaps subject to the CFTC's jurisdiction,' tribes may still regulate them under IGRA."[2] (Pet. at 2–3 (quoting Pet. Ex. A at 22).)

**B. Kalshi does not raise controlling questions.**

Kalshi also fails to establish that its preferred questions are controlling. *See Boone*, 71 F.4th at 625 (a question is controlling

---

[2] Kalshi mischaracterizes the district court's holding. The Court did not hold that the Nation may regulate swaps or DCM derivatives. It held only that, "even if" Kalshi's contracts are swaps subject to CFTC jurisdiction, Kalshi had not shown that the CEA displaced the Nation's authority under IGRA, its Compact, and Gaming Ordinance. (Pet. Ex. A at 22.) The Court later rejected Kalshi's broader formulation as not "accurately reflect[ing] the court's reasoning and conclusions." (Pet. Ex. B at 5.)

where its resolution is "quite likely to affect the future course of the litigation" (citing *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996))). Kalshi asserts that its questions are "not merely controlling but dispositive," (Pet. at 12), but that assertion depends on categorical answers to questions the district court declined to certify. Its statement that "plaintiff's claims against defendants must be dismissed," (*id.* (quoting Pet. Ex. B at 6)), addressed the certified questions, not Kalshi's rejected formulations.

Kalshi first asserts: "If this Court holds that § 2710(d)(7)(A)(ii) does not reach an entity that is not a party to the Compact or otherwise subject to its terms and does not give rise to claims for violations of tribal ordinances, the Nation has no statutory right of action under IGRA." (Pet. at 12.) That assertion combines two distinct propositions: (1) whether § 2710(d)(7)(A)(ii) may reach a compact nonparty, and (2) whether the Nation alleges gaming conducted "in violation of" its Compact. This Court concluded that jurisdiction under § 2710(d)(7)(A)(ii) "exists only when the alleged violation relates to a compact provision agreed upon pursuant to the IGRA negotiation process." *Ho-Chunk Nation,* 512 F.3d at 933.

The statutory object of § 2710(d)(7)(A)(ii) is class III *conduct* that allegedly violates an *effective compact*, not a particular class of defendants. (*See* Pet. Ex. A at 9–10); *accord Blue Lake II*, 2026 WL 2728466, at *10. Whether Kalshi's first question is controlling—let alone dispositive—therefore depends on the Compact-specific inquiry described above.

Kalshi's support for its second question suffers from an even more fundamental defect. It contends all remaining claims fail *if* the CEA's exclusive-jurisdiction provision, "confirmed by UIGEA's carve-out for DCM transactions," forecloses tribal regulation of contracts traded on a DCM. (Pet. at 12.) But that ruling would dispose of the Nation's claims *only if* CFTC exclusive jurisdiction encompasses the contracts at issue, an antecedent question the district court expressly declined to decide. (*See* Pet. at 14 ("The court itself declined to resolve whether Kalshi's contracts are swaps.").) Resolving that question would require this Court to decide an issue the district court neither resolved nor certified. Indeed, Kalshi recognizes the existing disagreement, citing conflicting circuit court decisions on this point. (Pet. at 17 n.4.)

### C. Kalshi cannot show that its issues are contestable.

Concerning contestability, both of Kalshi's preferred questions fall below the standard. First, the Ninth Circuit's decision in *Blue Lake II* substantially collapses the asserted basis for contestability vis-à-vis Kalshi's IGRA question. Although Kalshi relies on *Blue Lake Rancheria v. Kalshi Inc.*, No. 25-CV-06162-JSC, 2025 WL 3141202 (N.D. Cal. Nov. 10, 2025) ("*Blue Lake I*"), it acknowledges that the Ninth Circuit reversed that decision *before* the Petition was filed. (Pet. at 2.) *Blue Lake II* rejected the same nonparty theory, held that the statutory text of § 2710(d)(7)(A)(ii) identifies the object of "enjoin" as "a class III gaming activity," and not a compact party, and found that Congress "did not limit which entities may be enjoined." *Blue Lake II*, 2026 WL 2728466, at *9–10.

The Ninth Circuit applied IGRA in the same way as the district court, leaving no conflicting authority on Kalshi's nonparty theory. *Boim* does not establish otherwise. There, this Court deemed questions of first impression "certainly contestable" where "[n]o court ha[d] yet considered the meaning or scope" of the statutes at issue and the court therefore wrote "upon a *tabula rasa*." *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291

F.3d 1000, 1007–10 (7th Cir. 2002). The mere absence of controlling precedent from this Court does not place the question on the *blank slate* confronted in *Boim* 291 F.3d at 1010.

Second, the state-preemption cases do not create a conflict concerning Kalshi's second question. Kalshi concedes that "many other cases involving prediction markets are different [because] they address whether the CEA preempts state law as applied to trading on DCMs, as opposed to how to reconcile three federal statutes . . . ." (Pet. at 3–4.) *Flaherty* and *Assad* concern CEA preemption of state law; *Blue Lake II* specifically addressed the CEA vis-à-vis IGRA, "conclud[ing] that the two statutes simply address two different questions." *See Blue Lake II*, 2026 WL 2728466, at *13–14; (Pet. Ex. A at 22.)

### D. Review by this Court will not materially advance this litigation.

Finally, Kalshi fails to show immediate review of its preferred questions promises to materially advance the termination of this litigation. *See Ahrenholz*, 219 F.3d at 675. The defects discussed above demonstrate the opposite. Kalshi's first question requires application of *Ho-Chunk Nation* to the Nation's particular Compact

and Gaming Ordinance, while its second assumes that the contracts at issue are swaps subject to the CFTC's exclusive jurisdiction, an issue the District Court expressly declined to decide.

Nor does interlocutory review promise efficiency merely because a favorable answer to Kalshi's preferred questions might terminate the litigation. § 1292(b) asks whether immediate appellate resolution promises to speed up this litigation, not simply whether Kalshi can identify an appellate ruling that would end it. That concern is concrete here: the district court has stayed all proceedings pending interlocutory review. (Pet. Ex. B at 8.) Denying the Petition would permit the litigation to resume in the ordinary course.

Having resolved the threshold legal issues with the additional guidance supplied by *Blue Lake II*, the district court is positioned to resume proceedings toward final judgment. Allowing that process to run its ordinary course avoids piecemeal appellate review of questions that either require an instrument-specific inquiry or depend upon an issue the district court has not yet decided.

### E. Kalshi cannot avoid satisfying *Ahrenholz* by arguing novelty and national significance.

Novelty and national significance do not excuse Kalshi from satisfying each of *Ahrenholz*'s conjunctive requirements.[3] Kalshi's remaining arguments conflate the reasons this Court might exercise its discretion to hear an otherwise proper interlocutory appeal with the antecedent requirements for obtaining interlocutory review.

The Certification Order provides the only basis on which this Court could grant interlocutory review. The district court correctly recognized that Kalshi's proposed formulations did not accurately reflect the rulings below and instead certified questions that isolated the abstract legal issues actually decided. (Pet. Ex. B at 5–6.) At the time, those questions may have satisfied *Ahrenholz*. But the inquiry before this Court is whether those requirements are satisfied now, and intervening appellate authority has materially altered that calculus. As demonstrated below, after *Blue Lake II*, even the questions properly certified by the district court no longer satisfy § 1292(b).

---

[3] The district court likewise treated novelty and nationwide "percolat[ion]" as supplemental considerations only after concluding that its certified questions satisfied *Ahrenholz*. (Pet. Ex. B at 2, 5–7; *see* Pet. at 3–4 (identifying national significance and novelty as "a further reason to take the appeal").)

## III. *Blue Lake II* undermines the district court's conclusion that the certified questions satisfy *Ahrenholz*.

The district court's *Ahrenholz* analysis rested on the state of the law when it certified the appeal. At the time, the district court's May 11 Opinion and Order conflicted with *Blue Lake I.* Five days later, the Ninth Circuit decided *Blue Lake II*, materially altering the contestability and material-advancement inquiries.

In reversing *Blue Lake I*, the Ninth Circuit held that IGRA afforded the Tribes a § 2710(d)(7)(A)(ii) cause of action to enjoin unauthorized class III gaming activity on their lands; that UIGEA preserves rather than displaces IGRA's reach; and that although the CEA may give the CFTC exclusive authority within its field, "it neither negates IGRA nor bars federal courts from hearing a claim under it." *Blue Lake II*, 2026 WL 2728466, at *10–14. The intervening decision thus eliminated the conflict with *Blue Lake I* on which the district court materially relied in finding the certified questions contestable.

Kalshi provides no support for its argument that this reversal "underscores rather than removes the need for review. A district court and a court of appeals have now reached opposite

conclusions on the same question in the same case . . . .” (Pet. at 16.) But the decision on which the district court relied has been reversed. *Blue Lake II*, not *Blue Lake I*, states the law of that case, and its resolution of the relevant IGRA, UIGEA, and CEA issues accords with the district court’s. The decisional conflict supporting certification therefore no longer exists.

*Blue Lake II* also undermines the conclusion that immediate appeal “will unquestionably speed up the litigation.” (Pet. Ex. B at 6.) The intervening appellate decision supplies much of the “guidance” Kalshi contends warrants immediate review. (Pet. at 20.) Rather than await interlocutory review, the district court can resume proceedings toward final judgment, permitting any eventual appeal to address the issues in the ordinary course.

## IV. If the Court grants the Petition, it should also review the rulings adverse to the Nation in the certified order.

If this Court grants the Petition, it should also review the portions of the May 11 Order adverse to the Nation. An appeal under § 1292(b) “brings up the whole certified order, rather than just the legal issue that led to certification.” *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000); *see*

*Demkovich*, 3 F.4th at 974. The district court denied the Nation preliminary injunctive relief and dismissed its RICO and Lanham Act claims. (Pet. Ex. A at 23–30.) If this Court grants review, those rulings should also be reviewed.

### A. The Nation has been, and continues to be, irreparably harmed.

The district court erred in concluding that the Nation failed to establish irreparable harm. The district court treated the Nation's economic injury separately from the infringement of its sovereignty and characterized any loss of gaming revenue as "marginal at best and compensable at worst." (Pet. Ex. A at 22–24.) In doing so, the district court ignored the importance of the Nation's sovereignty and the role Congress assigned gaming revenues under IGRA.

Congress enacted IGRA to promote "tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). IGRA requires tribes to retain the "sole proprietary interest and responsibility" for gaming operations and regulates the disposition of net gaming revenues, restricting their use to purposes including funding tribal government operations and programs, providing for the general welfare of tribal members, and promoting

tribal economic development. *Id.* §§ 2710(b)(2)(A)–(B), (d)(1)(A)(ii). For tribes, class III gaming revenues are the "lifeblood on which many tribes have come to rely." *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1032 (9th Cir. 2022). Loss of those revenues therefore cannot be divorced from the sovereign interests IGRA protects merely because the injury can also be measured economically.

Nor does characterizing that loss as "compensable"—without identifying a legal basis for compensating the Nation—establish an adequate remedy at law. IGRA expressly authorizes a tribe to bring an action "to enjoin" class III gaming conducted on Indian lands in violation of a Tribal-State compact. 25 U.S.C. § 2710(d)(7)(A)(ii). The district court did not even suggest a legal basis for monetary damages to the Nation existed and Kalshi believes the Nation has no basis to bring suit against it (*see* Pet. at 12 n.2).

More fundamentally, infringement of tribal sovereignty is itself irreparable injury. *Kansas v. United States*, 249 F.3d 1213, 1227–28 (10th Cir. 2001); *Muscogee (Creek) Nation v. City of Henryetta*, 836 F. Supp. 3d 1148, 1168 (E.D. Okla. 2026) ("No monetary or retrospective relief can repair the invasion of sovereignty itself.").

Because the district court recognized that interference with the Nation's sovereignty and rights under IGRA "may be significant," (Pet. Ex. A at 24), and that the Nation was likely to succeed in establishing an ongoing violation of those rights, the district court erred in concluding that the Nation failed to establish irreparable harm.

### B. The District Court erred in dismissing the Nation's RICO claim based on the absence of fraudulent intent.

The Complaint alleged three predicate offenses: wire fraud under 18 U.S.C. § 1343, violation of the Wire Act under § 1084, and operation of an illegal gambling business under § 1955. (Pet. Ex. A at 7, 27–29.) Although intent to defraud is an element of wire fraud, it is not an element of the other two predicates. The Wire Act "is not itself a specific-intent crime." *United States v. Tedder*, 403 F.3d 836, 839 (7th Cir. 2005). Nor does § 1955 require a defendant to know that its gambling activity is illegal. *See United States v. Cyprian*, 23 F.3d 1189, 1199 (7th Cir. 1994).

The district court nevertheless dismissed the RICO claim after concluding that the Nation had not plausibly alleged "a scheme or intent to defraud," reasoning that Kalshi operated openly under a

"colorable argument" that its conduct was lawful under the CEA. (Pet. Ex. A at 28–29.) But whether Kalshi intended to defraud is immaterial to whether its alleged conduct violated §§ 1084 and 1955. Those offenses are independently included among RICO's predicate acts. *See* 18 U.S.C. § 1961(1). Accordingly, the absence of fraudulent intent could not support dismissal of the RICO claim insofar as it rested on those predicates.

### C. The District Court erred in dismissing the Nation's Lanham Act False Advertising claims.

The district court dismissed the Nation's claims holding the legality of Kalshi's sports-event contracts had not yet been definitively resolved. The Nation alleged, *inter alia*, that Kalshi falsely or misleadingly advertised its sports betting as "50 State Legal." (Pet. Ex. A at 24–27.) The district court concluded, citing an out-of-circuit authority, that because no controlling court or authority had definitively determined whether Kalshi's sports-event contracts were unlawful, the Nation did not plausibly allege those representations to be false or misleading. (*Id.* at 26–27.) The district court also failed to acknowledge or consider the Nation's second, and alternative, claim under the Lanham Act: if Kalshi prevailed in

showing its conduct did not constitute class III sports betting or gaming (i.e. the Nation's IGRA claim), Kalshi's advertisements describing its offerings as "sports betting" or "sports gaming" were false or misleading. (*See* Pet. Ex. B at 4.)

Regarding the Nation's first claim, the district court's reasoning effectively required the Nation to establish the ultimate legal premise of its claim at the pleading stage. On a motion to dismiss, however, the question is whether the complaint plausibly alleges entitlement to relief, not whether the plaintiff has already established the proposition on which that relief depends. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Nation alleged Kalshi's representations of nationwide legality were false or misleading, consistent with the Nation's IGRA claim, Kalshi's conduct violated IGRA and other applicable gaming laws making it illegal in at least Wisconsin. The fact that the legality of Kalshi's conduct remained disputed did not render those allegations implausible. Indeed, the district court separately concluded that the Nation was likely to succeed on its IGRA claim. (Pet. Ex. A at 22.) Should the Nation ultimately succeed on its IGRA claim, then so too would it succeed on its first Lanham Act claim. The district court dismissed the

Lanham Act claim at the pleading stage merely because the Nation had not secured final judgment over its IGRA claim, this is erroneous.

The district court's dismissal was further flawed because its reasoning rested on an out-of-circuit decision this Court—with good cause—has never adopted: *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). Contrary to *Coastal Abstract* and the district court's reasoning, the Supreme Court has allowed a Lanham Act false advertising claim premised on statements about illegality to proceed without suggesting that such statements are categorically non-actionable. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122–23 (2014) (discussing allegations that the defendant falsely represented that certain conduct involving the plaintiff's products was illegal, thereby misleading consumers and the market). Likewise, district courts in this Circuit have found statements regarding legality actionable under the Lanham Act without reliance on *Coastal Abstract*. *See, e.g.*, *Paul Davis Restoration, Inc. v. Everett*, No. 14-C-1534, 2014 WL 7140038, at *3–5 (E.D. Wis. Dec. 12, 2014); *Data Rsch. & Handling, Inc. v. Vongphachanh*, 278 F. Supp. 3d 1066, 1077–1079 (N.D. Ind.

2017). Whether *Coastal Abstract* governs claims like the Nation's is therefore an open question in this Circuit and should be resolved on an interlocutory basis. The Nation's Lanham Act claims are inexorably linked to the Nation's IGRA claim such that the Lanham Act claims should be allowed to run concurrent with the IGRA claim. *See Ahrenholz*, 219 F.3d at 675.

Even should this Court adopt *Coastal Abstract*, the Nation alleged Kalshi's conduct fell within the recognized lack-of-good faith exception. *See ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 615 (9th Cir. 2016). In short, Kalshi lacked a good faith belief that its representations were true when it advertised its products as "50 State Legal" because Kalshi is arguing in courts across the country that it does not conduct sports betting. (*See* Pet. at 61–62); *see also KalshiEX, LLC v. Assad*, No. 25-7516, 2026 WL 2543846 (9th Cir. Aug. 28, 2026).

## CONCLUSION

Kalshi has not carried its burden to justify permissive interlocutory review. Its proposed questions do not independently satisfy *Ahrenholz*, while *Blue Lake II* materially undermines the contestability and material-advancement grounds supporting the

district court's certified questions. This Court should therefore deny the Petition and permit the litigation to proceed to final judgment in the ordinary course. If this Court grants the Petition, however, it should review the entire May 11 Order and reverse the denial of preliminary injunctive relief and dismissal of the Nation's RICO and Lanham Act claims.

Dated: October 8, 2026

/s/Emily M. Feinstein

QUARLES & BRADY LLP
Emily M. Feinstein
Bryce A. Loken
33 East Main Street, Suite 900
Madison, WI 53703
Telephone: 608.251.5000
Facsimile: 608.251.9166
Emily.Feinstein@quarles.com
Bryce.Loken@quarles.com

THE LAW OFFICES OF RAPPORT AND MARSTON
Lester J. Marston
Scott Johnson
Cooper DeMarse
Nicholas Marston
John Bursick405 West Perkins Street
Ukiah, CA 95482
Telephone: 707.462.6846
Facsimile: 707.462.4235
ljmarston@rmlawoffice.net
ljmarston@rmlawoffice.net
scottrap@pacbell.net
cooper.demarse@gmail.com
nomarston@gmail.com
jabursick@gmail.com

Attorneys for Plaintiff HO-CHUNK NATION

## CERTIFICATE OF COMPLIANCE

I certify that this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because it contains 4949 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f).

This petition complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(a) because it has been prepared in 14-point Bookman Old Style font using Microsoft Office Word for Office 365.

Dated October 8, 2026

/s/ *Emily M. Feinstein*
Emily M. Feinstein

Counsel for Plaintiff-Respondent
Ho-Chunk Nation

## **Certificate of Service**

I hereby certify that on October 8, 2026, the foregoing document and its exhibits were electronically filed with the Clerk of the United States Court of Appeals for the Seventh Circuit by using the SM/ECF system. I further certify that on October 8, 2026, I caused a copy of this filing to be served by email on counsel for Defendants-Petitioners:

| |
|---|
| Sarah A. Zylstra<br>BOARDMAN & CLARK LLP<br>1 South Pinckney Street, Suite 410<br>Madison, WI 53701<br>Telephone: (608) 257-9521<br>szylstra@boardmanclark.com |
| Olivia S. Choe<br>Joshua B. Sterling<br>MILBANK LLP<br>1101 New York Avenue NW<br>Washington, D.C. 20005<br>Telephone: (202) 835-7500<br>ochoe@milbank.com<br>jsterling@milbank.com |
| Grant R. Mainland<br>Karen Wong<br>Victor Hollenberg<br>MILBANK LLP<br>55 Hudson Yards<br>New York, NY 10001<br>Telephone: (212) 530-5000<br>gmainland@milbank.com<br>kwong3@milbank.com |

vhollenberg@milbank.com

Anthony L. Ryan (pro hac vice)
Kevin J. Orsini (pro hac vice)
Brittany L. Sukiennik (pro hac vice)
Derek Mong
Ben Atlas
Peter Singhal
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com
dmong@cravath.com
batlas@cravath.com
psinghal@cravath.com

Mithun Mansinghani (pro hac vice)
LEHOTSKY KELLER COHN LLP
629 W. Main Street
Oklahoma City, OK 73102
Telephone: (512) 693-8350
mithun@lkcfirm.com

Jessica Hutson Polakowski
REINHART BOERNER VAN DEUREN S.C.
22 East Mifflin Street, Suite 700
Madison, WI 53703

Telephone: (608) 229-2200
jpolakowski@reinhartlaw.com